```
                 UNITED STATES DISTRICT COURT
                    DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| HOWARD CASPER,<br><br>         Plaintiff,<br><br>    v.<br><br>SMG,(formerly known as Spectator Management Group); ROBERT McCLINTOCK; and SOUTH JERSEY REGIONAL COUNCIL OF CARPENTERS, LOCAL 623,<br><br>         Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 00-3465 (JEI)<br><br>**OPINION** |

**APPEARANCES:**

SIDKOFF, PINCUS & GREEN, P.C.
By: Gary Green, Esq.
    Christopher D. Mannix, Esq.
    Casey Green, Esq.
2700 Aramark Tower
1101 Market Street
Philadelphia, PA 19107
    Attorneys for Plaintiff Howard Casper

FOX ROTHCHILD LLP
By: James A. Mathews, III, Esq.
    Jessica L. Pollock, Esq.
    Kelly A. McGrady, Esq.
2000 Market Street
10th Floor
Philadelphia, PA 19103
    Attorneys for Defendants SMG and Robert McClintock

JENNINGS SIGMOND, LLP
By: Howard Simonoff, Esq.
    James Katz, Esq.
1040 North Kings Highway
Suite 300
Cherry Hill, NJ 08034
    Attorneys for Defendant South Jersey Regional Council of
    Carpenters, Local 623

**IRENAS,** Senior District Judge:

This antitrust case arises out of a labor dispute involving trade show and convention work at the Atlantic City Convention Center. Presently before the Court is the Motion to Strike the Expert Opinions on Labor Related Issues of Dr. Phillip L. Harvey filed by Defendants SMG, Robert McClintock, and South Jersey Regional Council of Carpenters, Local 623 (collectively "Defendants"). For the reasons that follow, the Court will grant Defendants' motion.

I.

To place the present motion in context, a brief discussion of the parties' dispute is in order. Atlantic Exposition Services, Inc. ("AES"), Plaintiff Casper's assignor and predecessor plaintiff in this case, was a contractor who provided workers to set up and dismantle temporary exhibits for trade shows at the Atlantic City Convention Center ("ACCC") and other smaller venues in the Southern New Jersey area. Defendants SMG and McClintock, SMG's employee in-charge, managed the ACCC.

SMG entered into an agreement[1] ("Agreement") with Defendant

---

[1] Plaintiff prefers the term "scheme" to agreement, arguing that the arrangement between SMG and the Carpenters was "not a real 'labor agreement.'" (Plaintiff's Brief in Opposition to Defendants' Motion to Strike ("Opp. Br.") at p. 7 n.14) The Court chooses to use "agreement" because the NLRB and the Third Circuit both used that term in their respective opinions addressing the same set of facts. The use of "agreement" in this opinion is not meant to indicate any decision on the merits of this case.

2

South Jersey Regional Council of Carpenters, Local 623 (the "Carpenters") under which SMG would not subcontract work to employers, including AES, who did not have collective-bargaining agreements with the Carpenters.  This agreement prevented AES from using the less expensive Painter's union workers for jobs at the ACCC, allegedly causing AES to "lose marketing advantage, to incur significantly increased labor costs and resulting lost profits." (Compl. at ¶ 21)

AES attacked the Agreement in two different forums.  First, AES filed a complaint with the National Labor Relations Board ("NLRB") alleging that the Agreement was an unfair labor practice which violated Section 8(e) of the National Labor Relations Act.  In a written opinion, Administrative Law Judge Schlesinger held that the Agreement violated Section 8(e).  That holding was affirmed by the NLRB[2] and the Third Circuit,[3] although only the findings essential to the holding were affirmed.

AES now attacks the Agreement in this Court as a violation of the Sherman Act.[4]  Although this Court has not yet had the opportunity to address Plaintiff's antitrust claim on the merits, all parties appear to agree that a key legal issue in the

---

[2] *See South Jersey Regional Council of Carpenters, Local 623 et al.*, 335 N.L.R.B. 586 (2001) (affirming and republishing ALJ Schlesinger's opinion).

[3] *See SMG v. NLRB*, 320 F.3d 385 (3d Cir. 2003).

[4] This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1337.

antitrust case will be whether the "non-statutory labor exception" to the antitrust laws will apply to the Agreement.

## II.

Plaintiff's expert, Professor Philip L. Harvey ("Professor Harvey") is currently an Associate Professor of Law and Economics at Rutgers Law School.  He holds a J.D. and a Ph.D. in Economics. It is apparent from Professor Harvey's resumé and extensive list of publications that he is most accurately characterized as lawyer who also holds a doctorate in economics rather than an economist who also holds a law degree.[5]  In his expert report, he has opined on four specific questions which analyze certain conclusions reached by ALJ Schlesinger and address the three factors that the Third Circuit's *Conex* opinion identified as prerequisites for the application of the non-statutory labor exception.[6]

---

[5] Professor Harvey's previous jobs include law clerk to a federal district court judge and litigation associate at a large law firm.  Moreover, Plaintiff identifies his expert as "a professor of labor law and a lawyer" and then in a footnote adds, "Professor Harvey also has a doctorate in economics." (Opp. Br. at p. 6 and n.9)

[6] In *Consolidated Express, Inc. v. New York Shipping Association, Inc. ("Conex"),* 602 F.2d 494, 521 (3d Cir. 1979), *vacated on other grounds*, 448 U.S. 902 (1980), the Court held that where damages (as opposed to injunctive relief) are sought by a plaintiff, defendants may successfully invoke the non-statutory labor exception as a defense when they prove that (1) "they could not reasonably have foreseen that the subject matter of the agreement being challenged would be held to be unlawful under § 8(b)(4) or § 8(e) [of the National Labor Relations Act];" (2)"the contract provisions and steps taken were 'intimately related' to the object of collective bargaining thought at the time to be legitimate;" and (3) "went no further in imposing restraints in the secondary market than was reasonably necessary to accomplish it."

Defendants' present motion seeks to strike the report as impermissible legal opinion. Plaintiff asserts that while legal analysis may be inappropriate in other contexts, in this case *Conex* "invites, and indeed, may require" the type of analysis undertaken in Professor Harvey's report. (Opp. Br. at p. 7)

III.

A.

The district court must limit expert testimony so as to not allow experts to opine on "what the law required" or "testify as to the governing law." *U.S. v. Leo*, 941 F.2d 181, 196-97 (3d Cir. 1991). "The rule prohibiting experts from providing their legal opinions or conclusions is 'so well established that it is often deemed a basic premise or assumption of evidence law– a kind of axiomatic principle.' In fact, every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law." *In re Initial Public Offering Sec. Lit.,* 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (citing *U.S. v. Leo*; other citations omitted).[7]

---

[7] *See also The Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1043 (D. Ariz. 2005) ("Courts have held that expert testimony by lawyers, law professors, and others concerning legal issues is improper.") (citations omitted); 4-702 Weinstein's Federal Evidence § 702.03[3] ("Expert testimony is not admissible to inform the finder of fact as to the law that will be [applied] to the facts in deciding the case. . . . Expert witnesses are also prohibited from drawing legal conclusions . . . . This proscription precludes an expert from testifying in the language of statutes, regulations or other legal standards that are at the heart of the case.").

The Third Circuit's opinion in *United States v. Pecora* suggests that the same general rule is applicable in the labor context.[8]  798 F.2d 614 (3d Cir. 1986).  In that case, defendants presented two labor law professors as expert witnesses, who testified about the meaning of Section 302 of the Taft-Hartley Act and whether a union was a "representative" as that term was defined by Section 302.  The Court noted, "[o]f course, the opinions of witnesses on matters of law or on questions of ultimate fact, to the extent they depend on legal issues, are binding neither on this court, nor the district court."  *Id.* at 620 n.2.

Here, throughout his report, Professor Harvey relies on case law and statutes, applying them to the "contemporaneous documentary record" and "oral testimony"[9] in this case, to answer legal questions.  For example, answering the first of four questions asked of him, Professor Harvey concludes that he "agrees" with ALJ Schlesinger's determination that "SMG was not an employer in the construction industry for purposes of Section 8(e) [of the National Labor Relations Act]."[10]  (Def. Ex. A at p.

---

[8] The Court disagrees with Plaintiff's interpretation of *Conex*.  The Court finds no indication that the Third Circuit contemplated expert testimony like Professor Harvey's forming the basis of the factual inquiry the district court was invited to undertake in that case.

[9] (Def. Exhibit A (Professor Harvey's "Expert Opinions on Labor Related Issues") at p. 1)

[10] ALJ Schlesinger's determination on this issue was not essential to the ultimate holding in the case.  Therefore the NLRB, while affirming the holding, expressly declined to decide the issue.  *South Jersey Regional*

1)  Such proposed testimony is clearly a conclusion of law necessarily resulting from legal analysis.

Moreover, the analysis of this question has direct bearing on the legal determination that this Court may be asked to make in a later stage of this litigation: namely, whether Defendants "could not reasonably have foreseen that the subject matter of the agreement being challenged would be held to be unlawful under . . . § 8(e) [of the National Labor Relations Act]." *Conex*, 602 F.2d at 521.  Indeed, Professor Harvey's expert report explicitly opines that "a sophisticated, experienced, and well-counseled employer like SMG should have realized that its decision to require Service Contractors like AES to sign a collective bargaining agreement with [the Carpenters] violated Section 8(e)." (Def. Ex. A at p. 4)  Whether this conclusion is characterized as an issue of law or of ultimate fact, it is an issue for the Court to decide.  *See Pecora*, 798 F.2d at 620 n.2.

The answers to questions two[11] and three[12] in Professor

---

*Council of Carpenters, Local 623 et al.*, 335 N.L.R.B. at 586.  Thus, that determination has no preclusive effect.

[11] Question two asks: "Was the 1983 Collective Bargaining Agreement between the Atlantic City Convention Center Authority and [the Carpenters] binding on SMG in its engagement of carpenters to perform work for AES at the new ACCC in late September and early October?"

[12] Question three asks: "If the 1983 Agreement was not binding on SMG in the fall of 1998, was SMG bound by any other collective bargaining agreement or legal duty to (a) require AES to use carpenters furnished by SMG at the East Coast Video Show and (b) pay the carpenters it required AES to use and impose work rules concerning the use of those carpenters in accord with provisions of the 1983 Agreement?"

Harvey's report suffer from the same infirmities as the first question and answer. Professor Harvey's legal analysis of the facts of this case, and his conclusions, are inadmissible. While Plaintiff is free when the time comes to make such arguments and offer such conclusions in legal memoranda, he may not do so through the expert testimony of a law professor.

B.

In contrast with the other three questions, question four goes beyond legal analysis to address an economic question.[13] Question four asks: "Was it consistent with SMG's economic interest to impose the terms of the 1983 Agreement on AES for the Show Labor it furnished AES in connection with the East Coast Video Show in Late September and early October 1998?" (Def. Ex. A at p. 20)

For purposes of this motion, the Court assumes *arguendo* that Professor Harvey, even though primarily a lawyer, is qualified to give an expert economic analysis of the question presented. Thus, a qualified expert "may testify in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles

---

[13] To the extent Professor Harvey's answer to question four relies on legal analysis and legal conclusions, however, it is inadmissible for the reasons stated above. *Pecora*, 798 F.2d at 620 n.2.

and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. "An expert's opinion is reliable if it is 'based on the methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Elcock v. Kmart Corp.*, 233 F.3d 734, 745 (3d Cir. 2000) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994)). Unreliable expert testimony is inadmissible under Rule 702. *Wartsila NSD N. Am. v. Hill Int'l, Inc.*, 299 F. Supp. 2d 400, 407 (D.N.J. 2003); *Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 590 (D.N.J. 2003).

Professor Harvey states in his report that he is "unaware of any documents in the record" that support his answer to question four. Nonetheless, he concludes that it "would have been consistent" with SMG's economic interest to pursue a particular collective bargaining agreement with the Carpenters. Similarly, throughout his answer, Professor Harvey speaks about "possible reasons" for why SMG "might have wanted" AES to sign a particular agreement. Without any facts on which to base his opinion or specific methodology for arriving at a reliable inference, Professor Harvey's answer to question four is merely conjectural. *See Wartsila NSD N. Am.*, 299 F. Supp. 2d at 406 (expert testimony inadmissible where no methodology for expert's inferences was given and court was left with "nothing more than [expert's]

9

subjective belief"); *Am. Marine Rail NJ, LLC*, 289 F. Supp. 2d at 589 (expert testimony inadmissible where expert's "opinion is purely speculative, and not supported by a reliable foundation"). Because Professor Harvey's answer to question four is speculative, it is unreliable and therefore inadmissible under Rule 702.

IV.

For the reasons set forth above, the Motion to Strike the Expert Opinions on Labor Related Issues of Dr. Phillip L. Harvey will be granted.  The Court will issue an appropriate order.


Date:     October 5, 2005                s/*Joseph E. Irenas*
                                         **JOSEPH E. IRENAS, U.S.D.J.**

10